JENNIE MITCHELL ET AL., RESPONDENTS, v. ELIZABETH BASSETT, APPELLANT.

Argued June 24, 1923—Decided March 3, 1924.

1. Where a party has paid money on a contract entered into through a fraudulent misrepresentation, she may legally rescind the contract and recover back from the other party to it the moneys she has paid upon it; or, if she sees fit, she may maintain an action for deceit against the person or persons guilty of the fraud.

2. One who claims that she was fraudulently induced to subscribe for certain stock, by reason of a promise that if at any time she desired to dispose of it, defendant would take the stock at the price plaintiff has paid for it, may, in the event of a refusal by the promissor to perform, maintain an action for deceit and recover, as the measure of damages, the difference between the price paid for the stock and its value at the time performance was demanded; or she may maintain an action for a breach of the promise, *i. e.*, in *assumpsit*, the measure of damages being practically the same, namely, the difference between the purchase price of the stock and its value at the time of the breach.

---

On appeal from the Supreme Court.

For the appellant, *Charles A. Rathbun.*

For the respondents, *Bolitho & O'Connor.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This suit as originally instituted was brought against the present appellant, Elizabeth Bassett, and one Ethelbert Cooper. The case came on to be tried at the Morris Circuit, and resulted in the direction of a verdict in favor of the defendant Cooper and a submission of the question of the lability of Mrs. Bassett to the jury, under instructions which will be hereafter more specifically referred to. A verdict was rendered against the latter, and from the judgment entered thereon she has appealed.

The situation exhibited by the proofs, viewed in the light most favorable to the plaintiff, is as follows: Cooper was employed by a brokerage firm, known as H. W. Dubiske & Co., as a stock salesman. Having concluded that the plaintiff was a likely purchaser of the stock which he was then vending, he visited her for the purpose of persuading her to subscribe therefor, and took with him the defendant, Mrs. Bassett, to act as a "booster." Finding her at home, Cooper and Mrs. Bassett urged her to invest in these stocks, painting the investment in glowing colors, and falsely and fraudulently representing to her that by their acquisition she would realize large profits and would run no danger of losing any part of the moneys which she should put in. As a part of the inducement for her to purchase, Mrs. Bassett promised that, if at any time after her acqusiton of the stock she desired to dispose of it, she (Mrs. Bassett) would take it off her hands at the price which she should pay for it. Induced by these representations, and fully believing their truth, Mrs. Mitchell agreed to purchase the stocks to the extent of $1,400, signed subscription agreements between herself and the Dubiske concern to that effect, and paid the moneys called for by these subscription agreements. The moneys were forwarded to the Dubiskie company, and certificates for the stock subscribed by her were in due course sent to and received by her from the Dubiskie company. Subsequently, becoming doubtful of the soundness of her investment, and desiring the moneys she had paid for the stock in order that she might therewith purchase a piece of real estate, she called

on Mrs. Bassett, reminding her of her promise and request-ing her to purchase the stock and to repay her the purchase price of $1,400. Mrs. Bassett refused to comply with this request, and thereupon the present suit was brought.

It is difficult to understand, from a reading of the plead-ings and an examination of the testimony sent up with the appeal, the theory upon which this action was brought and tried. Where a party has paid money on a contract entered into through a fraudulent misrepresentation, she may, hav-ing legally rescinded the contract, recover back from the other party to it (in this case Dubiske & Company) the moneys she has paid upon it; or, if she sees fit, she may maintain an action for deceit against the person or persons guilty of the fraud. *Byard* v. *Holmes,* 33 *N. J. L.* 119; *Hanrahan* v. *National Building, &c., Assn.,* 66 *Id.* 80. Ap-parently, this suit was brought to enforce the latter right—that is, to recover from the alleged fraud doers the loss sus-tained by the plaintiff by reason of the fraud. But, evidently, the trial judge did not take this view of the legal aspect which the case presented, for otherwise he would not have directed a verdict in favor of the defendant Cooper. He must have considered—as is apparent from his charge to the jury—that the promise of Mrs. Bassett to Mrs. Mitchell, that if the latter at any time wanted back the money which she had invested, she (Mrs. Bassett) would take the stock off her hands at the price paid for it, was the inducing cause of the plaintiff's purchase, and that, because of the breach of this promise, she was entitled to recover from Mrs. Bassett the full amount of the purchase price of the stock, notwithstand-ing the fact that she still had in her possession the stock certificates which she had received from Dubiske & Company. The instruction was as follows: "If you believe there was such an agreement, and it was simply upon that agreement that she passed over her money to this man Cooper, then Mrs. Bassett owes her that money in law." In accordance with this instruction, the jury returned a verdict for the full amount of the moneys paid by Mrs. Mitchell on her stock subscriptions.

The excerpt just quoted from the charge is made the principal ground of appeal, and it seems to us plainly erroneous. If the theory of the trial judge, in delivering this instruction, was that the promise of Mrs. Bassett was made in fraud, for the purpose of inducing Mrs. Mitchell to subscribe to the stock, and that, for this reason, the latter was entitled to be reimbursed for the loss which she had sustained as the result of the fraud, the measure of damages was the difference between the price paid for the stock and its value at the time Mrs. Mitchell demanded the performance of that promise. *Crater* v. *Binninger,* 33 *N. J. L.* 513, 516; *Duffy* v. *McKenna,* 82 *Id.* 62. If, on the other hand, the theory of the instruction was based upon the breach of the promise—that is, that the action was one in *assumpsit*—then the measure of the damages was the loss sustained by the breach of the contract, and those damages are practically the same above recited, namely, the difference between the purchase price of the stock and its value at the time of the breach. *Drake* v. *Baker,* 34 *Id.* 358; *Massman* v. *Steiger,* 79 *Id.* 442. The instruction could only be justified by the fact that, under the uncontroverted proof in the cause, the stock purchased by the plaintiff was shown to have been abolutely valueless; and there was no such evidence. On the contrary, the only testimony was that it had depreciated somewhat in value after the sale, but whether slightly or to a considerable extent did not appear. As a result, therefore, of the application of the rule of damages laid down by the court, the plaintiff, Mrs. Mitchell, has recovered from the appellant every dollar which she paid for the stock, and in addition retains the stock itself, the value of which may be very nearly the price which she originally paid for it, while Dubiske & Company have in their pockets the subscription price paid for the stock; and the appellant is compelled to repay that price to the plaintiff out of her own funds, without having received any equivalent for so doing.

For the reason stated, the judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, HEPPENHEIMER, VAN BUSKIRK, JJ.   10.